## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

ANITA HERNANDEZ,                              :          1:24-cv-5790

               Plaintiff,          :

       -against-                          :          **VERIFIED COMPLAINT**
THE OFFICE OF THE RICHMOND COUNTY
DISTRICT ATTORNEY, MICHAEL            :
McMAHON, and THE CITY OF NEW YORK,

            Defendants.          :          **JURY TRIAL DEMANDED**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiff, ANITA HERNANDEZ, through Counsel, states for her Verified Complaint as follows:

### PRELIMINARY STATEMENT

1.     This case presents a grave injustice inflicted upon a Plaintiff, Anita Hernandez, a Born Again Christian who has faithfully served as a Detective Investigator for the Richmond County District Attorney's Office. Ms. Hernandez's deeply held religious beliefs compel her to oppose abortion in all forms—a conviction that led her to refuse the COVID-19 vaccine, as all available vaccines were produced, tested, or researched using aborted fetal cell lines. Instead of respecting her constitutionally protected religious beliefs, the Defendants embarked on a campaign of discrimination, mischaracterization, and condescension that culminated in the unlawful denial of her request for a religious exemption.

2.     The Richmond County District Attorney's Office, under the direction of District Attorney Michael McMahon, dismissed Plaintiff's sincere religious objection to abortion as nothing more than a "personal, political preference," thereby delegitimizing her faith and denigrating her commitment to the sanctity of life. In a display of breathtaking ignorance or willful disregard, the Defendants went so far as to tell Plaintiff that being a Born Again

Christian—one of the most profound expressions of Christian faith—was not a religion. They further compounded their insult by invoking the Pope's approval of the vaccine, despite the fact that Plaintiff is not Catholic and her beliefs are independent of the Pope's teachings.

3.      This cavalier and unconstitutional treatment of Ms. Hernandez's religious beliefs was not an isolated incident but part of a broader, systemic pattern of discrimination. When Ms. Hernandez sought relief from the City of New York, her request was summarily denied without explanation by a Citywide Panel whose actions reveal a predisposition to reject religious objections to abortion. This Panel, acting with reckless disregard for the law, routinely and admittedly dismissed deeply held religious opposition to abortion as mere "personal beliefs," effectively placing its own value judgment above the sacred convictions of the faithful. Such actions are not only deeply offensive but also a blatant violation of the Free Exercise Clause of the First Amendment to the United States Constitution, as well as New York State and City Human Rights Laws.

4.      The Defendants' actions reveal a profound hostility towards religious beliefs that do not conform to their own views on abortion. As the Supreme Court has made abundantly clear that "[g]overnment may neither compel affirmation of a repugnant belief nor penalize or discriminate against individuals because they hold religious views abhorrent to the authorities." *Sherbert v. Verner*, 374 U.S. 398, 402 (1963). Yet, that is precisely what the Defendants have done. They have penalized Ms. Hernandez, not because of any legitimate governmental interest but because her religious beliefs challenge their own stance on abortion—a matter that lies at the very core of her faith.

5.      This Court must recognize the egregious nature of the Defendants' conduct and hold them accountable for their blatant violation of the law. The Defendants have trampled upon

Ms. Hernandez's constitutional rights with disdain that is both shocking and reprehensible. Ms. Hernandez stands before this Court seeking not only justice for herself but a reaffirmation of the fundamental rights that protect every individual's freedom to live according to their sincerely held religious beliefs—rights that are enshrined in the Constitution and must not be eroded by those who wield power.

## PARTIES

6.      Plaintiff is a citizen of the United States and a resident and domiciliary of Horray County, State of South Carolina.

7.      At all relevant times, Plaintiff was an employee of the Richmond County District Attorney's Office and the City of New York within the meaning of the NYSHRL and NYCHRL.

8.      Plaintiff was a Detective Investigator for the Richmond County District Attorney's Office since 2020.

9.      Plaintiff was placed on Leave Without pay on March 29, 2022 and then terminated on April 7, 2022 because Defendants refused to reasonably accommodate her religious beliefs.

10.      Plaintiff's refuses all vaccines in accordance with her sincerely held religious beliefs as an Evangelical Born Again Christian.

11.      The Office of the Richmond County District Attorney (hereinafter "RCDA"), is a statutory office located in the County of Richmond, a municipal corporation duly organized and existing under and by virtue of the Laws of the State of New York. The RCDAs principal office is located at 130 Stuyvesant Place, Staten Island, New York.

12.      Defendant Michael E. McMahon is the District Attorney of the County of Richmond. His place of business is 130 Stuyvesant Place, Staten Island, New York.

13.     Defendant City of New York is a municipality organized and existing under the laws of New York State. The City of New York was and is responsible for the policy, practice, supervision, and conduct of its Officers and Agencies at all relevant times hereto. The City of New York's principal office is located at 1 Centre Street, New York NY 10007.

14.     At all times herein mentioned, Defendants have been an "employer" as defined by the NYSHRL (N.Y. Exec. Law § 292(5)) and the NYCHRL (N,Y.C. Admin. Code § 8-102).

15.     At all times herein mentioned, Defendants employed no fewer than fifteen (15) persons.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. Additionally, this Court had jurisdiction pursuant to 28 U.S.C. § 1332 because this action is between Citizens of different States and the matter in controversy exceeds the value of $75,000.

17.     Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367 to hear claims so related under the New York State Human Rights Law and the New York City Human Rights Law.

18.     Venue is proper in this district under 28 U.S.C. §1391(b) because Defendants maintains a principal place of business within this District and a substantial part of the events giving rise to the cause of action arose here.

## STATEMENT OF FACTS

19.     Plaintiff, Anita Hernandez, (hereinafter "Plaintiff" or "Ms. Hernandez") was employed as a Detective Investigator for the Richmond County District Attorney's Office ("RCDA") since July 2020.

20.    Ms. Hernandez is an Evangelical Born Again Christian and refuses all vaccination based upon her religious beliefs.

21.    Vaccination was not a condition of employment when Ms. Hernandez was hired by the RCDA in 2020.

22.    Ms. Hernandez's employment record with the RCDA was without blemish.

23.    Ms. Hernandez is a former New York City Police Department detective. She had retired when her daughter was five years old so that she could focus on being a mother.

24.    At no time during Ms. Hernandez's employment with the RCDA was she ever suspended or found to be insubordinate.

25.    In early 2020, COVID-19 began circulating in New York City.

26.    In March of 2020, the Governor of New York State issued an executive order closing "non-essential" businesses.

27.    Ms. Hernandez was hired around the same time, but as an "essential worker" Ms. Hernandez worked throughout the COVID-19 pandemic.

28.    Ms. Hernandez believed this job with the Richmond County District Attorney's Office was a blessing from God. She thrived on investigating cases, loved the field, and was good at it.

29.    And being hired by the District Attorney meant financial stability for herself and her daughter.

30.    Plaintiff worked throughout the COVID-19 pandemic, in person, for over two years.

31.     On April 12, 2021, the Richmond County District Attorney, Michael McMahon, sent an e-mail to all employees, including Ms. Hernandez, which urged employees to get vaccinated with a particularly hostile tone. The e-mail stated in part:

> Think about your RCDA colleagues!
>
> Many of us have been working in the office and the Courts throughout the pandemic and many of you have worked diligently from home and many have done both. In early May, or thereabouts, that will change and everyone will have to report to the office on a rotating basis. Do you want to be the one who infects your colleagues, threaten their health, or brings the criminal justice system to a halt?
>
> Admittedly, those of us who are older worry about this a little more than those of you who are younger. Yet, it seems to me that we all have a duty to do whatever we can to keep each other safe. That includes getting properly informed and educated. If you don't trust the scientists and doctors then you should ask yourself, "Am I in the right business?" Every day our work is grounded in facts as we search for the truth. And to do that we have to rely on our individual discernment after we have reviewed all of the available information. Some we receive and some we have to seek out. But in the final analysis, we have to apply common sense.
>
> Educate yourself, use common sense, and please get vaccinated.

32.     On October 20, 2021, the New York City Commissioner of Health and Mental Hygiene issued the City Worker COVID-19 Vaccine Mandate, an Order requiring all City Workers to receive a COVID-19 vaccine by October 29, 2021 (hereinafter "Vaccine Mandate").[1] Subsection eight of the Health Commissioner's Order provides for reasonable accommodations.

33.     The Vaccine Mandate provided for reasonable accommodations on its face pursuant to the Order of the New York City Commissioner of Health and Mental Hygiene.

34.     The Defendants implemented a procedure for accepting accommodation requests.

35.     Vaccination was not a condition of employment for those who were granted a religious or medical accommodation.

---

[1] Health Commissioner's Order, accessible at  https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-city-employees.pdf

36.     The City promulgated a written policy regarding the implementation of the Vaccine Mandate and the reasonable accommodation process.

37.     This policy, entitled "FAQ on New York City Employees Vaccine Mandate" provided that "[a] sincerely held religious, moral, or ethical belief may be a basis for a religious accommodation."

38.     This policy also provided that the alternative to vaccination allowed which would not cause an undue hardship if an employee is granted a reasonable accommodation would be submission of a weekly negative test result.

39.     This policy also provided that employees who requested reasonable accommodations would continue working and submitting weekly negative test results while their accommodation request was pending with their individual agency, and then with the Citywide Panel.

40.     This policy also provided for medical accommodations. Temporary medical accommodations were provided for employees within the isolation period after COVID-19 infection and employees within ninety days of antibody treatment. Permanent medical accommodations were provided for employees who were unable to mount an immune response to COVID-19.

41.     McMahon was the primary decisionmaker responsible for reasonable accommodations of RCDA employees, including Plaintiff.

42.     McMahon had unbridled discretion to grant religious exemptions to whichever RCDA employees that provided religious reasons he deemed worthy.

43.     McMahon had the authority to adjudicate exemption requests and set the terms for accommodations.

44.     McMahon set up a policy of individualized, discretionary exemptions for RCDA employees.

45.     This policy afforded McMahon total discretion to rule on individual cases.

46.     McMahon's religious accommodation policy authorized individual assessments with no apparent guidelines or guardrails.

47.     Defendants never informed Plaintiff of any criteria, factors, or requirements for receiving a religious accommodation to the Vaccine Mandate.

48.     At no time prior to the Vaccine Mandate did the RCDA ever require Ms. Hernandez to receive any vaccinations. Nor was vaccination ever a condition of employment.

49.     On October 20, 2021, Ms. Hernandez was notified by Ashleigh Owens, Chief of Staff of RCDA, via e-mail, that employees who intended on applying for a medical or religious accommodation should obtain the necessary paperwork and submit it by October 29, 2021 in order to avoid being placed on unpaid leave.

50.     RCDA's Equal Employment Opportunity Policy states: "The reasonable accommodation process should be flexible and interactive, involving agency representatives who are necessary to the reasonable accommodation process and the individual who is requesting a reasonable accommodation. In all instances, the agency EEO office should be notified of the request in order to facilitate discussions, research appropriate accommodations, and assist in the resolution of the matter."

51.     On October 22, 2021, Ms. Hernandez submitted a written request for a reasonable accommodation to RCDA. She sought both a religious exemption as well as a medical exemption, putting RCDA on notice of the conflict between her sincerely held religious beliefs and complying with the vaccine mandate.

52.     Ms. Hernandez's request included a form entitled "Reasonable Accommodation Request Form", which was provided by the RCDA, as well as a personal letter.

53.     On October 22, 2021, Ms. Hernandez submitted the Reasonable Accommodation Request Form to the RCDA along with a personal statement explaining that she is opposed to the COVID-19 vaccines on account of their use of aborted fetal cell lines in the research, testing, production, or development process. In her letter, she explicitly stated that the reason for her objection to the COVID-19 vaccination was her sincere religious beliefs against abortion on account of her Evangelical "Born Again Christian" faith.

54.     All COVID-19 vaccines available in the United States utilize aborted fetal cell lines in the research, testing, production, manufacturing, or development process.

55.     The basis for her medical exemption request was her three pre-existing, well-documented blood coagulating disorders in addition to a family history of the same.

56.     In her letter, she offered several different reasonable accommodations, specifically, mask wearing, hand washing/sanitizing, social distancing, weekly testing, and work from home.

57.     The nature of the accommodation requested by Ms. Hernandez was weekly PCR testing, social distancing, mask wearing, and hand washing/sanitizing.

58.     On October 28, 2021, Ms. Hernandez had a meeting with Monique Jones, Director of Operations at RCDA. Ms. Jones told Ms. Hernandez that she and Ashleigh Owens, Chief of Staff of RCDA, had reviewed her accommodation requests and felt that she was not a candidate for a religious exemption. Ms. Jones told her that the Pope said it was okay to receive the vaccine. When Ms. Hernandez explained that she is not Catholic, but an Evangelical Born

Again Christian with a personal relationship with Jesus Christ, Ms. Jones told her: "That is not a religion" and stated that it would not qualify for a religious exemption.

59.     Ms. Jones told her that as long as she was actively pursuing medical advice and was "in the process" of seeking answers from medical professionals then she would be permitted to remain working while submitting weekly negative COVID test results and wearing a mask at all times.

60.     Ms. Jones called Ms. Hernandez back in the office the same day and asked for documentation showing that she was in the process of seeking medical advice.

61.     Ms. Hernandez submitted two doctor's notes to Ms. Jones that same day, one from her hematologist and one from her orthopedic.

62.     Ms. Hernandez continued to follow up with her doctors, undergoing evaluations, blood work, and testing to ascertain whether she could medically receive the COVID-19 vaccine.

63.     On November 19, Ms. Jones asked Ms. Hernandez to call her, and inquired about her medical follow up. Ms. Hernandez explained the appointments she had gone to and the follow up appointments she had scheduled.

64.     On November 29, 2021, Ms. Hernandez submitted a letter from Dr. Brian Mignola. The letter stated that she was in a hypercoagulative state and was pending for further evaluation and testing.  Dr. Mignola stated that Ms. Hernandez could not receive the COVID-19 vaccines until "testing is confirmed with severity of diagnosis."

65.     On November 30, 2021, Ms. Jones told Ms. Hernandez that a definitive answer from her doctor on whether she could medically receive the COVID0-19 vaccine was required, and that submitting the weekly negative COVID-19 testing had a limit.

66.     On December 2, Ms. Hernandez had another meeting with Ms. Jones, and submitted a doctor's letter, dated December 1, 2021, from her hematologist, Dr. Kenneth Hymes, stating that she should delay receiving the COVID-19 vaccine until her blood test results were back. At that meeting, Ms. Jones informed Ms. Hernandez for the first time that she was considered to be on a "temporary medical accommodation."

67.     On December 8, 2021, Ms. Hernandez had another meeting with Ms. Jones, and was placed on Leave Without Pay ("LWOP").

68.     RCDA had never communicated to Ms. Hernandez whether her religious accommodation request had been denied at the time she was placed on LWOP, and she never received any written determinations of her accommodation requests.

69.     RCDA never informed Ms. Hernandez that she had the ability to appeal denials to the Citywide Panel, or that she could continue working and submitting PCR testing while the appeal was pending.

70.     Defendants never informed Plaintiff of any criteria, factors, or requirements for receiving a religious accommodation to the Vaccine Mandate.

71.     The City's written policy on the COVID-19 Vaccine Mandate provided that "an agency must issue a written determination. If the accommodation is denied or the employee disagrees with the accommodation granted, the written determination must also include information about the appeals process."

72.     At that point, Ms. Hernandez was without pay and was afraid she would not be able to take care of herself and her daughter. She realized she might have to sell the home that her daughter had lived in for her entire life. Her daughter took it very hard, and this on top of Ms.

Hernandez's own fear of how they would survive, caused Ms. Hernandez extreme distress. Every day was a struggle emotionally.

73.    RCDA had violated the City's policy by putting Plaintiff on LWOP, for failing to provide a written denial, and for failing to provide her with notice of the appeal process.

74.    On January 13, 2022, Ms. Hernandez submitted a letter from her primary care physician, Dr. Rita Malhotra, stating that she was "medically exempt from COVID vaccination due to hypercoagulable medical state." Ms. Jones informed her that she had to file a new reasonable accommodation request form seeking a medical accommodation.

75.    Ms. Hernandez then retained counsel. On January 27, 2022, Ms. Hernandez's attorney sent a letter to Ashleigh Owens, Chief of Staff at RCDA, citing the many illegal violations of Ms. Hernandez's rights as an employee of RCDA, demanding immediate reinstatement and backpay. Ms. Hernandez's attorney pointed out that the RCDA's reasonable accommodation process was improper in form and substance, that RCDA never provided any written denials, that RCDA never provided any determination whatsoever on her religious accommodation request, that RCDA never informed Ms. Hernandez she could appeal to the New York City Vaccine Mandate Reasonable Accommodation Appeals Panel, that RCDA illegally placed Ms. Hernandez on Leave Without Pay, that Ms. Hernandez was entitled to continue working while her accommodation requests were pending, and that Ms. Hernandez was entitled to both religious and medical accommodations to the vaccine mandate.

76.    On February 3, 2022, at the request of RCDA, Ms. Hernandez, along with the President and Vice President of her Union, met with Ashleigh Owens and, Monique Jones, Director of Operations at RCDA, to discuss the status of her accommodation requests and her placement on LWOP. RCDA conceded, and followed up in email, that they never provided Ms.

Hernandez with any written determination of her accommodation requests, that she was improperly placed on LWOP, and agreed to provide back pay to December 9, 2021, when she was put on LWOP, as well as immediately reinstate her.

77.     In that follow-up email, from Ashleigh Owens, dated February 3, 2022, RCDA wrote at length regarding Ms. Hernandez's medical accommodation request. Ms. Owens claimed that Ms. Hernandez's medical accommodation had actually been approved but had expired.

78.     Two sentences at the end of the e-mail addressed her religious accommodation request, stating: "RCDA has also clarified that although her original request approved on a medical basis, we never received any additional documentation for her reference to a religious accommodation request, which was in the same paperwork. We are happy and willing to continue to accept documentation to support that request and will make a final determination on that request based on what has been submitted so far on 2/7 or 2/8 along with the medical request."

79.     Ms. Hernandez went back to work on February 7, 2022.

80.     On February 8, 2022, RCDA denied both of her requests for reasonable accommodations in writing via e-mail from Monique Jones, Director of Operations at RCDA. This e-mail also finally gave her notice of her right to an appeal to the Citywide Panel. The e-mail stated in pertinent part:

> During our interactive dialogue meeting on Thursday, February 3, 2022, and in the subsequent email recapping that meeting, you were asked to provide additional documentation in support of the written submission that was attached to your original RA request before February 8, 2022.
>
> It was explained to you that this documentation and all information provided is critical to our fair evaluation of your request. Since you did not submit additional documentation to support your request, we did not have sufficient information to determine the sincerity of your belief, which allows us to separate those requests that are rooted in religious, ethical,

moral beliefs from those that are personal or political preferences. The latter, personal/political preferences, do not qualify for an exemption.

Using this standard, and after a thorough review of your submission and our conversations regarding this request and condition of employment, **your request for a religious exemption to the COVID-19 vaccine condition of employment has been denied.**

81.    However, RCDA never required Ms. Hernandez to submit any additional documentation to support her request.

82.    RCDA did not ask Ms. Hernandez for information about the religious nature or sincerity of her beliefs regarding her religious objection to the COVID-19 vaccination.

83.    Ms. Hernandez explained in her religious accommodation request that she was pro-life due to her rigorous religious upbringing as a Born Again Christian, and that she was objecting to the COVID-19 vaccine based upon the aborted fetal tissue used to aid in the development process of the COVID-19 vaccines.

84.    RCDA did not have any objective basis to doubt the sincerity of Ms. Hernandez's religious beliefs regarding COVID-19 vaccines.

85.    RCDA did not have any objective basis to doubt the religious nature of Ms. Hernandez's religious beliefs regarding COVID-19 vaccines.

86.    Moreover, even if the RCDA doubted that Ms. Hernandez's beliefs regarding abortion were *religious,* these beliefs clearly constitute an ethical or moral belief pursuant to the City's reasonable accommodation policy.

87.    There was no cooperative dialogue or interactive process with regard to Ms. Hernandez's religious accommodation request.

88.    RCDA never engaged in any type of discussion – written, oral, or otherwise – regarding Plaintiff's accommodation needs.

89.     RCDA never engaged in any type of discussion – written, oral, or otherwise – regarding potential accommodations that may address Plaintiff's accommodation needs.

90.     RCDA never engaged in any type of discussion – written, oral, or otherwise – regarding alternatives to Plaintiff's requested accommodation.

91.     RCDA never engaged in any type of discussion – written, oral, or otherwise – regarding difficulties that any potential accommodations may pose for the RCDA.

92.     RCDA never communicated to Ms. Hernandez that her sincerity or the religious nature of her objection was in question, nor did they ask her any questions or try to understand the nature of her religious objections in any way.

93.     During this time, Ms. Hernandez was under extreme stress and suffered emotionally. She had gotten her job back but then the RCDA immediately denied her request. She was again on shaky ground, and worried day and night that termination was imminent, and she would no longer be able to provide for her daughter.

94.     She started trying to ease her daughter into the fact that they would have to sell her childhood home. Her daughter took it extremely hard, and this put a huge strain on Ms. Hernandez.

95.     She was able to keep up with all of her work but she was seriously suffering emotionally. The situation in the workplace was extremely tense.

96.     One day, the District Attorney came into the office where Ms. Hernandez worked and he shook hands with every other person, passing her right by, and giving her a nasty look. This caused Ms. Hernandez extreme shame, reputational harm, embarrassment, and anxiety.

97.     There was no relief for Ms. Hernandez after she would leave the office and go home to worry about not being able to keep her home and take care of herself and her daughter.

98.     She suffered intense anxiety during this time.

99.     On February 11, 2022, Ms. Hernandez submitted two appeals to the New York City Vaccine Mandate Reasonable Accommodation Appeals Panel (hereinafter "Citywide Panel"). One appeal was for the RCDA's denial of her request for a religious accommodation, and the other was for the RCDA's denial of her request for a medical accommodation.

100.    The Defendants were able to accommodate Plaintiff with weekly testing while her religious and medical accommodation requests were pending with the Citywide Panel.

101.    With her appeal of her religious accommodation to the Citywide Panel, RCDA was required to submit Ms. Hernandez's original request, and then Ms. Hernandez also submitted a letter from her attorney, explaining RCDA's legal violations thus far and Ms. Hernandez's right to accommodation.

102.    Ms. Hernandez also submitted a personal statement explaining her Evangelical Born Again Christian beliefs and exactly how those beliefs related to her refusal of the COVID-19 vaccination and inability to comply with the City's Vaccine Mandate.

103.    Ms. Hernandez detailed her experience with infertility and pregnancy loss. She explained how this affected her religious beliefs on abortion:

> My entire life being raised in the church, being taught His Word, means nothing until it becomes internalized, personal, heart-felt and spiritual. I whole heartedly believe that life begins at conception, that God knows us before we are ever born, and abortion is wrong. If it weren't for my constant leaning into to my faith in God I would have never been able to come through this ordeal and all of the trials that I suffered. My Amanda is living proof of God's Grace in my life!
>
> It is public knowledge that all of the COVID-19 vaccines utilize aborted fetal cell lines – either in the testing or in the manufacture of the vaccine itself. Even if vaccination in general did not go against my faith for the reasons explained above, I would not be able to accept this vaccine in particular because of its use of aborted fetal cell lines. Life is sacred. I suffered too much in trying to conceive a child. I lost so many unborn babies. To think of one of those poor souls being used as science experiments to have a vaccine

tested on its cells or used to grow a virus to make a vaccine. It is sickening. It is most certainly a sin against God and one I would never participate in.

104.    Ms. Hernandez also informed the Citywide Panel that she had "God-given antibodies" against SARS-CoV-2.

105.    She continued to work while her appeal was pending with the Citywide Panel, submitting weekly PCR test results.

106.    The Defendants cannot demonstrate that providing a religious accommodation would cause an undue hardship where Plaintiff had antibodies to COVID-19.

107.    The Department of Health promulgated guidance stating people with prior infections had protection similar to vaccinated individuals:

> These data demonstrate low levels of reinfection, compared to first infections. This did not change after the Omicron variant emerged in December 2021, although the number of reinfections increased.
>
> Data on this page also suggest that people with a prior diagnosed COVID-19 infection have had some protection against future infections. This is similar to lower levels of infection among vaccinated people ('breakthrough infection'), compared to among unvaccinated people, which is used to demonstrate vaccine effectiveness.
>
> Our in-depth study measured the relative protection afforded by vaccination and/or prior infection, during 2021, before the Omicron variant emerged. Both may offer protection against future infections and COVID-19 hospitalizations. However, because initial infections carry increased risk of illness and death, vaccination remains the safest strategy to prevent COVID-19 and associated complications and is the only strategy that should be pursued.

*COVID-19 Reinfection*, NEW YORK STATE DEPARTMENT OF HEALTH,

https://coronavirus.health.ny.gov/covid-19-reinfection-data (last accessed June 7, 2022).

108.    The Defendants cannot demonstrate that providing a religious accommodation would cause an undue hardship, particularly where they accommodated her for months with weekly testing while her religious accommodation was pending with the RCDA and then with the Citywide Panel.

109.    On March 15, 2022, Monique Jones, Director of Operations at RCDA, e-mailed the Plaintiff and notifies her that her medical accommodation request denied by the Citywide Panel. Ms. Jones instructed Ms. Hernandez to continue weekly testing while her religious accommodation was pending before the Citywide Panel.

110.    On March 24, 2022, Ms. Jones e-mailed Ms. Hernandez notifying her that her religious accommodation request was denied by the Citywide Panel. She provided notice that Ms. Hernandez would be placed on Leave Without Pay in three days and would be terminated in seven days.

111.    None of the Defendants provided any reasoning for the final denial of Ms. Hernandez's request for reasonable accommodation from the Citywide Panel.

112.    None of the Defendants contacted Ms. Hernandez regarding the documentations she submitted to the Citywide Panel.

113.    The Citywide Panel did not communicate with Ms. Hernandez at all with regard to her accommodation request other than the boilerplate denial.

114.    There was no cooperative dialogue or interactive process with regard to Ms. Hernandez's religious accommodation request.

115.    The Citywide Panel never engaged in any type of discussion – written, oral, or otherwise – regarding Plaintiff's accommodation needs.

116.    The Citywide Panel never engaged in any type of discussion – written, oral, or otherwise – regarding potential accommodations that may address Plaintiff's accommodation needs.

117.    The Citywide Panel never engaged in any type of discussion – written, oral, or otherwise – regarding alternatives to Plaintiff's requested accommodation.

118.    The Citywide Panel never engaged in any type of discussion – written, oral, or otherwise – regarding difficulties that any potential accommodations may pose for the RCDA.

119.    The Citywide Panel never communicated to Ms. Hernandez that her sincerity or the religious nature of her objection was in question, nor did they ask her any questions or try to understand the nature of her religious objections in any way.

120.    The Citywide Panel granted other City Workers religious accommodations.

121.    At this point, the moment that Ms. Hernandez had been agonizing over for the last several months was imminent. She was going to lose her job.

122.    On March 9, 2022, Ms. Hernandez was placed on Leave Without Pay.

123.    On April 7, 2022, RCDA terminated Ms. Hernandez's employment.

124.    Ms. Hernandez knew at this point she would have to sell her home. She was devastated.

125.    Ms. Hernandez started having massive panic attacks. She suffered from a variety of physical symptoms, including chest pain, failing to the floor, hyperventilating, hands and feet going numb, lips turning blue, and shaking.

126.    She counseled with both doctors and pastors to try to get a control over her mental health, which was deteriorating daily.

127.    She was severely depressed and struggled with getting through each day. She suffered with feelings of worthlessness and suicidal ideations.

128.    On or about February 9, 2023, the New York City Department of Health and Mental Hygiene amended the Vaccine Mandate, no longer requiring exclusion from the workplace for City Workers who do not provide proof of COVID-19 vaccination. However, the Vaccine Mandate still requires City Workers to provide proof of COVID-19 vaccination.

129.    The Defendants destroyed her entire life for a temporary work requirement that they would be lifting any way.

130.    Ms. Hernandez was forced to sell her home and could no longer afford to live in New York City.

131.    Plaintiff is currently receiving therapy to address the emotional and psychological impact of the adverse actions taken against her by the Defendants.

132.    She still suffers from panic attacks, extreme bouts of anxiety, depression, and loss of focus.

133.    She has moved to South Carolina where she tries every to heal herself every day.

134.    Just getting through each day is a struggle.

135.    She is unable to work in the field that she loves due to her severe depression and anxiety.

136.    The Defendants have a policy of refusing to recognize a conflict between an applicant's beliefs and their Vaccine Mandate when the applicant cited an objection to the COVID-19 vaccine based on the use of aborted fetal cell lines in the vaccine's research, testing, development, and production.

137.    The Citywide Panel policy was that applicants' "belief[s] [that] articulated a prohibition from taking a vaccine that contains cells from aborted fetuses was inapplicable to COVID-19 vaccines because they do not contain cells from aborted fetuses." Affirmation of Eric Eichenholtz, *Vasquez v. New York City Fire Dep't.*, et. al., Index No. 533122/2022, NYSCEF Doc. No. 35, ¶30, March 16, 2023.

138.    The Defendants had unchecked authority in determining which religious beliefs merit accommodation.

139.    The Defendants' accommodation policies only allowed for religious accommodations for applicants who were members of religions that they deemed recognized and established religious organizations.

140.    But Defendants granted decision-makers reviewing religious accommodation requests substantial discretion in determining whether to approve or deny such requests.

141.    The policies and procedures governing religious accommodation requests were vague and lacked clear, objective criteria, allowing decision-makers to exercise broad, subjective judgment.

142.    This broad discretion enabled decision-makers to impose their own personal or ideological biases when assessing the validity of religious objections, leading to arbitrary and inconsistent outcomes.

143.    Defendants applied the standards for granting religious accommodations inconsistently, with different decision-makers interpreting and applying the rules in varied and often contradictory ways.

144.    Defendants approved requests for religious accommodations from individuals with beliefs similar to Plaintiff's but denied Plaintiff's request, demonstrating an inconsistent and discriminatory application of the standards.

145.    The substantial discretion afforded to decision-makers, combined with the inconsistent application of standards, resulted in the arbitrary denial of Plaintiff's religious accommodation request.

146.    Plaintiff was treated differently from similarly situated individuals who were granted accommodations, solely because the decision-maker reviewing her request chose to reject her religious beliefs as insufficient under the vague and discretionary guidelines.

147.    Defendants' inconsistent application of standards, particularly in cases involving religious objections related to abortion, reveals a pattern of arbitrary decision-making that lacks any rational basis or legitimate government interest.

148.    The RCDA refused to acknowledge Plaintiff's religion as a Born Against Christian to be a "religion".

149.    The RCDA denied Plaintiff's request for a religious accommodation based upon the public statements of the Roman Catholic Pope.

150.    RCDA was acting at the direction of Michael McMahon.

151.    Plaintiff is not a Roman Catholic.

152.    Plaintiff does not follow the Pope.

153.    It was the Defendants' policy that a religious accommodation request would be denied where the religious leader of the applicant's religious organization has spoken publicly in favor of the vaccine, or where the applicant could not provide written support from a religious leader.

154.    In practice, the Defendants interpreted the leader of an applicant's religious organization to categorically deny accommodation to huge categories of religions.

155.    The RCDA incorrectly interpreted the leader of Plaintiff's religious organization to be the Pope.

156.    This requirement that a religious leader cannot have spoken out publicly in favor of the vaccine was originally used by the City as the Religious Accommodation standards for Department of Education employees.

157.    The Second Circuit then enjoined the City from implementing an accommodation process "where the leader of the [applicant's] religious organization has spoken publicly in favor

22

of the vaccine" and where applicants' "religious beliefs were [deemed] merely personal because there are other [members of their faith] who choose to get vaccinated". *Kane v. De Blasio*, 19 F.4th 152, 168–69 (2d Cir. 2021).

158.    However, after the Second Circuit struck these standards down as unconstitutional, the City continued to utilize these standards and expanded them throughout its agencies, including RCDA and the Citywide Panel.[2]

159.    For example, in the case of a Catholic New York City Police Detective who applied for a religious accommodation to the Vaccine Mandate based upon the use of aborted fetal cell lines and his religious opposition to abortion based upon his Catholic faith, the City rejected his religious objection, stating that his "claims, including that taking the currently available vaccines would violate principles of his Catholic faith, are not based in the very religion to which he allegedly maintains a sincerely held religious belief." *Furno v. New York City Police Dep't*, Index No. 85021/2023, NYSCEF Doc. No. 31, March 2, 2023, at p. 16. The City explained:

> Petitioner claims he is a "conscientious and devout Catholic" and that he "cannot in good conscience accept a vaccine, which employs cell lines derived from aborted fetuses as it violates fundamental aspects of his Catholic faith." Yet Petitioner ignores the reality that the Catholic faith, as attested to by the Sovereign Pontiff Francis ("Pope Francis") advocates for vaccination against COVID-19. Pope Francis has explicitly stated that the COVID-19 vaccine is "authorized by the respective authorities" and is an "act of love." Indeed, Pope Francis himself, arguably Catholicism's most prominent physical embodiment of the "Holy Spirit" of concern to Petitioner herein, has been vaccinated against COVID-19. Moreover, the Vatican's Congregation for the Doctrine of the Faith stated, "It is morally acceptable to receive COVID-19 vaccines that have used cell lines from aborted fetuses in their research and production process," and further, "all vaccinations recognized as clinically safe and effective can be used in good conscience with the certain knowledge that the use of such vaccines does not constitute formal cooperation with the abortion from which the cells used in production of the vaccines derive, which statements were "explicitly approved by Pope Francis."

*Id.* at p. 15-16.

---

[2] The City expanded these stricken standards as an official written option to many different City agencies.

160.    It was the Defendants' policy to reject applicants' religious beliefs if they were

personal and not shared by other members of the applicant's religious sect.

161.    The Mayor admitted as much in a statement to the Press:

**Question:** Could you maybe go into some of that criteria so I know like with religious exemptions, for example, there have been leaders such as the Pope that have said it's okay you know, to get – for Catholics to get the vaccine. So, are there any religious exemptions that you know of?
**Mayor:** Yeah, it's a great question. Thank you. Yes. And very powerfully Pope Francis has been abundantly clear that there's nothing in scripture that suggests people shouldn't get vaccinated. Obviously, so many people of all faiths have been getting vaccinated for years and decades. There are, I believe it's two well-established religions, Christian Science and Jehovah's Witnesses that have a history on this, of a religious opposition. But overwhelmingly the faiths all around the world have been supportive of vaccination. So, we are saying very clearly, it's not something someone can make up individually. It has to be, you're a standing member of a faith that has a very, very specific long-standing objection. Go ahead.

*Transcript: Mayor de Blasio Holds Media Availability*, City of New York, September 23, 2021,

available at https://www.nyc.gov/office-of-the-mayor/news/644-21/transcript-mayor-de-blasio-

holds-media-availability.[3]

162.    The Defendants refused to accept the validity of applicant's individual

interpretations of their religious creeds, including Plaintiff.

163.    The Defendants denied applicants if they did not show that refusal of vaccination

was mandated by their religion, including Plaintiff.

164.    Defendants refused to acknowledge a "conflict" where an applicant's religion did

not explicitly require the refusal of vaccines, including Plaintiff.

165.    The Defendants improperly rejected requests for accommodations based on

religious objections to the use of aborted fetal cell lines, including Plaintiff's.

---

[3] Plaintiff requests that the Court take judicial notice of the transcript of the Mayor's statements, available on the City's website.

166.    The City promulgated guidance to private sector employers regarding religious accommodation requests to the City's COVID-19 Vaccine Mandate, and acknowledged the refusal to receive the COVID-19 vaccine based upon the use of aborted fetal cell lines in the testing, research, development, and/or manufacturing of the vaccines.

167.    In denying Plaintiff's (and other City Workers) abortion-based request, Defendants made a negative normative evaluation of Plaintiff's religious beliefs, effectively dismissing her sincere opposition to abortion as an inadequate justification for a religious exemption.

168.    The Citywide Panel exercised its discretion to routinely deny religious accommodation requests to the COVID-19 Vaccine Mandate based on religious objections to abortion, including Plaintiff's.

169.    For example, the Citywide Panel would state that applicants who refused the COVID-19 vaccine based on their religious objection to abortion "did not explain how [they] had a specific belief consistent with [their] refusal of the vaccines at issue here." Affirmation of Eric J. Eichenholtz, *Furno v. New York City Police Dep't*, Index No. 85021/2023, NYSCEF Doc. No. 31, ¶31, March 2, 2023.

170.    The Citywide Panel also rejected religious beliefs about the use of aborted fetal cell lines in the production and testing of the COVID-19 vaccines as "inapplicable". *Id.*

171.    Defendants refused to accept abortion-based objections, and held that they were not a sufficient or valid basis for a religious exemption.

172.    However, the City promulgated guidance to private sector employers regarding religious accommodation requests to the City's COVID-19 Vaccine Mandate and acknowledged

the refusal to receive the COVID-19 vaccine based upon the use of aborted fetal cell lines in the testing, research, development, and/or manufacturing of the vaccines.

173.    The Citywide Panel routinely rejected religious beliefs about abortion as merely "personal beliefs" even where applicants, including Plaintiff, explicitly stated that their objections to the COVID-19 vaccination were based upon their religious opposition to abortion.

174.    The Defendants cannot demonstrate that providing a reasonable accommodation to the Vaccine Mandate would cause an undue hardship, particularly where RCDA accommodated Ms. Hernandez's medical condition.

175.    Moreover, Ms. Hernandez was accommodated with weekly PCR testing for months while her accommodation requests were pending.

176.    The New York County District Attorney, Kings County District Attorney, and Queens County District Attorney all granted religious accommodations to the Vaccine Mandate, and allowed accommodated employees to continue working in person. (No one in the Bronx County District Attorney's Office applied for a religious accommodation.)

177.    Other City Workers were also granted religious accommodations from the Vaccine Mandate, including active-duty police officers working in the field, that had contact with the public and other members of the NYPD. These police officers were granted an accommodation of weekly PCR testing and were allowed to continue working in person.

178.    Additionally, the Unified Court System granted religious accommodations for court officers working in the state courts throughout New York City, which allowed accommodated court officers to continue working in person.

179.    The Defendants cannot demonstrate that providing a reasonable accommodation to the Vaccine Mandate would cause an undue hardship, particularly where the COVID-19 vaccine does not cause prevention or transmission of the COVID-19 virus.

180.    The Defendants cannot demonstrate that providing a reasonable accommodation to the Vaccine Mandate would cause an undue hardship, particularly where the Vaccine Mandate only required employees to receive the initial dose(s) of the COVID-19 vaccination and did not require any subsequent booster shots.

181.    The Defendants cannot demonstrate that providing a reasonable accommodation would cause an undue hardship, particularly where other District Attorney's Offices in the five boroughs were granting religious accommodations.

182.    The Defendants could have accommodated Plaintiff's religious request by providing routine weekly testing and masking.

183.    The Defendants were able to accommodate Plaintiff in this way for her medical condition.

## CLAIMS

## FIRST CAUSE OF ACTION

### (Violation of the Free Exercise Clause of the First Amendment of the United States Constitution)

184.    Plaintiff reincorporates the foregoing as if fully written herein.

185.    The Free Exercise Clause of the First Amendment to the United States Constitution prohibits the government's burdening of a sincerely held religious belief. The First Amendment provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I.

186.    "[A] law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of the Lukumi Babalu Aye, Inc.v. Hialeah*, 508 U.S. 520, 546 (1993). A non-neutral or non-generally applicable law must be the least restrictive means available to further a compelling government interest in order to withstand strict scrutiny.

187.    Plaintiff's sincerely held religious beliefs and practices prohibit her from receiving the COVID-19 vaccination.

188.    The Defendants' Vaccine Mandate and the denial of her request for a reasonable accommodation and religious exemption substantially burden Plaintiff's free exercise of religion, in that compliance would require violation of his religious beliefs as the sole alternative to suffering adverse employment actions, including LWOP and termination.

189.    Defendants' refusal to accommodate the Plaintiff's religious beliefs created coercive pressure on her to change or violate her sincerely held religious beliefs.

190.    The Defendants' Vaccine Mandate is not generally applicable.

191.    The Defendants retain sole discretion to grant exemptions and accommodations to the Vaccine Mandate.

192.    McMahon retains sole discretion to grant exemptions to RCDA employees, including Plaintiff.

193.    McMahon created a mechanism for individualized exemptions but then in practice declined to extend it to cases of religious hardship.

194.    The City had the ultimate authority to grant Plaintiff's appeal.

195.    The City gave the Citywide Panel members reviewing religious exemption requests substantial discretion over whether to grant those requests.

196.     Citywide Panel members applied religious accommodation policies and standards inconsistently.

197.     Defendants had substantial unbridled discretion over which religious exemption requests would be granted and which would be denied based upon value judgments on the applicants' beliefs.

198.     Defendants granted secular accommodations on more favorable terms than religious exemptions.

199.     Defendants had a lower bar for denying religious exemptions.

200.     Defendants granted medical exemptions regardless of undue hardship but denied religious exemptions due to alleged undue hardship.

201.     In a federal lawsuit against the City – *New Yorkers for Religious Liberty v. the City of New York* - Eric Eichenholtz, the architect of the Citywide Panel and Chief Assistant Corporation Counsel for Employment Policy and Litigation at the Office of the New York City Corporation Counsel, testified that Citywide Panel decisions are truly "individualized" and are constrained by no objective criteria.

202.     The Defendants created a formal mechanism for granting exemptions to the Vaccine Mandate whereby applicants were directed to apply to their respective agencies, here, the RCDA, and then the Citywide Panel.

203.     The face of the Vaccine Mandate itself – in the Order of the New York City Commissioner of Health and Mental Hygiene – provides for religious accommodations.

204.     Defendants arbitrarily denied Plaintiff's religious exemption request based upon a discriminatory rejection of her religious beliefs.

205.    Defendants permitted thousands of City Workers, including Plaintiff, to continue working unvaccinated while their accommodation requests and appeals were pending.

206.    Defendants permitted certain employees to continue working while unvaccinated for economic reasons.

207.    The Defendants' Vaccine Mandate and policies on reasonable accommodations are not neutral.

208.    Defendants refused to accept sincerely held religious beliefs and practices that conflict with the Vaccine Mandate, including Plaintiff's.

209.    Defendants individually assessed the reasons that Plaintiff refused the COVID-19 vaccination and decided her religious beliefs are not worthy of a religious exemption.

210.    Defendants refused to acknowledge the Plaintiff's and other City Workers' religious objections as constituting a conflict with the Vaccine Mandate.

211.    Defendants refuse to acknowledge the religious nature of an objection to the COVID-19 vaccination, mischaracterizing Plaintiff's (and other City Workers') objections as merely personal preferences.

212.    Defendants passed judgment on Plaintiff's religious beliefs and presupposed the illegitimacy of those beliefs and practices.

213.    Defendants required Plaintiff and other City Workers to provide clergy letters and prove that their beliefs were shared by others of their faith.

214.    Defendants incorrectly compared Plaintiff's belief to others.

215.    RCDA refused to acknowledge Plaintiff's Born Again Christian religion, and claimed it was not a religion.

216.    RCDA rejected Plaintiff's religious objection to COVID-19 vaccination because of the Pope's public opinion on the COVID-19 vaccine.

217.    Defendants denied the Plaintiff's request for religious exemption because they disagree with her opposition to abortion.

218.    Defendants improperly preferred certain religious sects when granting religious exemptions to the Vaccine Mandate.

219.    Defendants gave preferential treatment to similarly situated employees who also remained unvaccinated for religious reasons.

220.    Defendants singled out Plaintiff by refusing to acknowledge that her beliefs are religious while allowing others with religious objections from certain religious sects to continue working.

221.    Defendants are hostile to Plaintiff's religious beliefs because she is not a member of one of the Defendants' "preferred sects".

222.    The Defendants limited religious exemptions to applicants who belonged to established, organized religions which had a long-standing public history of opposition to vaccination.

223.    Defendants demonstrated a hostility to Plaintiff's religious practices and beliefs.

224.    The Defendants improperly segregated Plaintiff from others with religious objections to the Vaccine Mandate by allowing applicants with certain religious beliefs to continue working while testing but terminating Plaintiff.

225.    Defendants demonstrated animus to Plaintiff's specific religious practices in burdening her religious exercise while allowing other religious objectors to continue working.

226.    Defendants implemented the Vaccine Mandate in a discriminatory manner by implementing denominational preferences for certain religious sects, such as Christian Scientists and other sects that the Defendants recognize as established.

227.    Defendants refused to provide Plaintiff with a religious exemption based on their unilateral determination regarding the religious necessity of refusing the COVID-19 vaccination.

228.    Defendants refused to provide Plaintiff with a religious exemption based on their personal interpretations of the correctness of Plaintiff's religious beliefs and practices.

229.    Defendants refused to provide Plaintiff with a religious exemption based on their personal interpretations of the plausibility of Plaintiff's religious understandings.

230.    Defendants substituted their judgment about what Plaintiff's faith requires.

231.    Defendants denied Plaintiff based on the rejection of the verity of her religious beliefs.

232.    Defendants do not have a compelling interest in requiring Plaintiff to violate her sincerely held religious beliefs as a result of the inconclusive functionality of the available COVID-19 vaccines in preventing viral transmission, carry, and illness.

233.    Moreover, Defendants' interest in mandating Plaintiff to be vaccinated cannot be compelling where other employees are provided reasonable accommodations for both religious and medical reasons.

234.    Less restrictive means to reduce the spread of COVID-19 are available to the Defendants, including masking, PCR testing, antibody testing, temperature checks, remote work, among others. As such, the Defendants' COVID-19 vaccination mandate fails strict scrutiny.

235.    Terminating Plaintiff was not the least restrictive means of stemming the spread of COVID-19.

236.    Terminating Plaintiff imposed discipline on her for exercising her right to free exercise of her religious beliefs.

237.    Defendants' actions injured and continue to injure Plaintiff by chilling her religious activity through the withholding of pay, discipline, and termination.

238.    Plaintiff is entitled to a declaration that the Defendants violated her First Amendment right to the free exercise of religion.

239.    Plaintiff is entitled to equitable relief.

240.    Further, Plaintiff is entitled to reasonable costs of this lawsuit, including attorneys' and experts' fees pursuant to 42 U.S.C. § 1988 and other applicable law, as well as compensatory damages, including pain and suffering, and punitive damages against the Defendants, including emotional distress and pain and suffering in an amount to be proven at trial. The U.S. Supreme Court has held that individual damages are available against violators. *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020).

241.    Defendants conduct is particularly reprehensible because they specifically and purposely discriminated against Plaintiff's religious opposition to abortion.

242.    Defendants' violation of Plaintiff's religious exercise evidenced an indifference to and a reckless disregard of her religious rights.

## SECOND CAUSE OF ACTION

**(Failure to Accommodate in Violation of the New York City Human Rights Law)**

243.    Plaintiff reincorporates the foregoing as if fully written herein.

244.    At all relevant times, the NYCHRL has been in full force and effect and has

applied to Defendants' conduct.

245.    Pursuant to the NYCHRL,

It shall be an unlawful discriminatory practice for an employer or an employee or agent thereof to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion, … and the employer shall make reasonable accommodation to the religious needs of such person.

N.Y.C. Admin. Code § 8–107(3)(a).

246.    At all relevant times, the Defendants were employers of Ms. Hernandez.

247.    At all relevant times, the Defendants had the power to hire, promote, and

discharge Ms. Hernandez.

248.    Ms. Hernandez has sincerely held religious beliefs which prohibit her from

receiving the COVID-19 vaccines.

249.    The Defendants required Ms. Hernandez to receive the COVID-19 vaccine to

retain her employment.

250.    However, receiving the COVID-19 vaccination would require Ms. Hernandez to

violate her religious beliefs.

251.    Ms. Hernandez requested a reasonable accommodation to the Defendants'

requirement that she receive the COVID-19 vaccination based on her sincerely held religious

beliefs.

252.    Defendants denied Ms. Hernandez's request for a religious accommodation.

34

253.    Defendants failed to provide Ms. Hernandez with a reasonable accommodation of her religious observance, practice, and belief (i.e., that she is prohibited from taking the COVID-19 vaccine), which precludes her from complying with the Vaccine Mandate.

254.    Ms. Hernandez was able to perform the essential duties of her job with a reasonable accommodation.

255.    Ms. Hernandez vaccination status did not prevent her from fulfilling the obligations of her position.

256.    Accommodating Ms. Hernandez would not require significant expense or difficulty from the Defendants.

257.    Accommodating Ms. Hernandez would not significantly interfere with the safe or efficient operation of the Defendants' workplace.

258.    Accommodating Ms. Hernandez would not require the Defendants to violate a bona fide seniority system.

259.    Instead of accommodating Ms. Hernandez's religious beliefs, Defendants terminated her because she could not receive the COVID-19 vaccination.

260.    Ms. Hernandez was terminated because the Defendants refused to accommodate her religious beliefs.

261.    Ms. Hernandez articulated and explained the religious nature of her conflict with the Vaccine Mandate.

262.    Defendants simply rejected Ms. Hernandez's religious beliefs without reason.

263.    Defendants discriminated against Ms. Hernandez's religious beliefs.

264.    As a direct and proximate result of Defendants' unlawful discriminatory practices, Ms. Hernandez has suffered, and continues to suffer, substantial losses, including but not limited

to the loss of past and future earnings, compensation and benefits, increases, promotions, bonuses, pension, and other employment benefits, for which she is entitled to an award of monetary damages which will be determined at trial, which exceeds the $75,000 jurisdictional requirement of this Court, and other relief.

265.    As a direct and proximate result of Defendants' failure to accommodate, Ms. Hernandez suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages in an amount to be determined at trial.

266.    As a direct and proximate result of Defendants' failure to accommodate, Ms. Hernandez is thus entitled to injunctive and declaratory relief, as well as compensatory damages, including pain and suffering, and punitive damages for the injuries and loss sustained as a result of Defendants' unlawful discriminatory conduct under the NYCHRL, in an amount to be determined at trial.

267.    Defendants willfully violated Ms. Hernandez's right to a reasonable accommodation.

268.    Defendants willfully and wrongfully terminated Ms. Hernandez.

269.    Defendants knew they were acting in violation of the law.

270.    The Defendants knew that Ms. Hernandez's beliefs qualified as religious under the law.  There is no common sense reading of her request where Ms. Hernandez's objection to the Vaccine Mandate is not based on sincerely held religious beliefs. However, Defendants categorically rejected Ms. Hernandez's religious beliefs.

271.    Defendants callously rejected Ms. Hernandez's request for accommodation displaying a blatant lack of any true consideration before hastily issuing a boilerplate denial.

272.    Defendants acted with malice.

273.    Defendants' actions amount to willful or wanton negligence.

274.    Defendants' discrimination was willful.

275.    Defendants' discrimination was reckless.

276.    Defendants consciously disregarded Ms. Hernandez's right to a reasonable accommodation.

277.    Defendants consciously disregarded Ms. Hernandez's right to retain her employment.

278.    Defendants' conduct was so reckless as to amount to a conscious disregard of the rights of Ms. Hernandez.

279.    Defendants acted with reckless indifference to Ms. Hernandez's rights.

280.    As a direct and proximate result of Defendants' conduct, Ms. Hernandez is entitled to punitive damages under NYCHRL in an amount to be determined at trial.

281.    Ms. Hernandez is further entitled to an award of attorney's fees, expert fees, and other costs under the NYCHRL. N.Y.C. Admin. Code §8-502(g).

## THIRD CAUSE OF ACTION

### (Failure to Accommodate in Violation of the NYSHRL)

282.    Plaintiff reincorporates the foregoing as if fully written herein.

283.    At all relevant times, the NYSHRL has been in full force and effect and has applied to Defendants' conduct.

284.    The NYSHRL provides:

It shall be an unlawful discriminatory practice for any employer, or an employee or agent thereof, to impose upon a person as a condition of obtaining or retaining employment, including opportunities for promotion, advancement or transfers, any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion, including but not limited to the observance of any particular day or days or any portion thereof as a sabbath or other holy day in accordance with the requirements of his or her religion or the wearing of any attire, clothing, or facial hair in accordance with the requirements of his or her religion, unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business.

N.Y. Executive Law § 296(10)(a).

285.    At all relevant times, the Defendants were employers of Ms. Hernandez.

286.    At all relevant times, the Defendants had the power to hire, promote, and discharge Ms. Hernandez.

287.    Ms. Hernandez has sincerely held religious beliefs which prohibit her from receiving the COVID-19 vaccines.

288.    The Defendants required Ms. Hernandez to receive the COVID-19 vaccine to retain her employment.

289.    However, receiving the COVID-19 vaccination would require Ms. Hernandez to violate her religious beliefs.

290.    Ms. Hernandez requested a reasonable accommodation to the Defendants' requirement that she receive the COVID-19 vaccination based on her sincerely held religious beliefs.

291.    Defendants denied Ms. Hernandez's request for a religious accommodation.

292.    Defendants failed to provide Ms. Hernandez with a reasonable accommodation of her religious observance, practice, and belief (i.e., that she is prohibited from taking the COVID-19 vaccine), which precludes her from complying with the Vaccine Mandate.

293.    Ms. Hernandez was able to perform the essential duties of her job with a reasonable accommodation.

294.    Ms. Hernandez vaccination status did not prevent her from fulfilling the obligations of her position.

295.    Accommodating Ms. Hernandez would not require significant expense or difficulty from the Defendants.

296.    Accommodating Ms. Hernandez would not significantly interfere with the safe or efficient operation of the Defendants' workplace.

297.    Accommodating Ms. Hernandez would not require the Defendants to violate a bona fide seniority system.

298.    Instead of accommodating Ms. Hernandez's religious beliefs, Defendants terminated her because she could not receive the COVID-19 vaccination.

299.    Ms. Hernandez was terminated because the Defendants refused to accommodate her religious beliefs.

300.    Ms. Hernandez articulated and explained the religious nature of her conflict with the Vaccine Mandate.

301.    Defendants simply rejected Ms. Hernandez's religious beliefs without reason.

302.    Defendants failed to engage in any interactive process with Ms. Hernandez regarding her accommodation request.

303.    Defendants failed to engage in good faith with Ms. Hernandez in order to understand her need for accommodation.

304.    Ms. Hernandez sufficiently articulated her sincerely held religious beliefs to the Defendants.

305.    Defendants violated the NYSHRL by denying Ms. Hernandez's request for a reasonable accommodation without first engaging in an interactive process.

306.    As a direct and proximate result of Defendants' unlawful discriminatory practices, Ms. Hernandez has suffered, and continues to suffer, substantial losses, including but not limited to the loss of past and future earnings, compensation and benefits, increases, promotions, bonuses, pension, and other employment benefits, for which she is entitled to an award of monetary damages which will be determined at trial, which exceeds the $75,000 jurisdictional requirement of this Court, and other relief.

307.    As a direct and proximate result of Defendants' failure to accommodate, Ms. Hernandez suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages in an amount to be determined at trial.

308.    As a direct and proximate result of Defendants' failure to accommodate, Ms. Hernandez is thus entitled to injunctive and declaratory relief, as well as compensatory damages, including pain and suffering, and punitive damages for the injuries and loss sustained as a result of Defendants' unlawful discriminatory conduct under the NYCHRL, in an amount to be determined at trial.

309.    Defendants willfully violated Ms. Hernandez's right to a reasonable accommodation.

310.    Defendants willfully and wrongfully terminated Ms. Hernandez.

311.    Defendants knew they were acting in violation of the law.

312.    The Defendants knew that Ms. Hernandez's beliefs qualified as religious under the law.  There is no common sense reading of her request where Ms. Hernandez's objection to the Vaccine Mandate is not based on sincerely held religious beliefs. However, Defendants categorically rejected Ms. Hernandez's religious beliefs.

313.    Defendants callously rejected Ms. Hernandez's request for accommodation displaying a blatant lack of any true consideration before hastily issuing a boilerplate denial.

314.    Defendants made a conscious decision to violate Ms. Hernandez's rights.

315.    The Defendants knew that they were required under the law to engage in a good faith discussion with Ms. Hernandez in an attempt to understand her accommodation needs. However, the Defendants did not engage in such good faith interactive process or cooperative dialogue.

316.    Defendants acted with malice.

317.    Defendants' actions amount to willful or wanton negligence.

318.    Defendants' discrimination was willful.

319.    Defendants' discrimination was reckless.

320.    Defendants consciously disregarded Ms. Hernandez's right to a reasonable accommodation.

321.    Defendants consciously disregarded Ms. Hernandez's right to an interactive process.

322.    Defendants consciously disregarded Ms. Hernandez's right to retain her employment.

323.    Defendants' conduct was so reckless as to amount to a conscious disregard of the rights of Ms. Hernandez.

324.    Defendants acted with reckless indifference to Ms. Hernandez's rights.

325.    As a direct and proximate result of Defendants' conduct, Ms. Hernandez is entitled to punitive damages under the NYSHRL in an amount to be determined at trial.

326.    Ms. Hernandez is further entitled to an award of attorney's fees, expert fees, and other costs under the NYSHRL. Executive Law § 297(10).

## FOURTH CAUSE OF ACTION

### (Failure to Engage in a Cooperative Dialogue in Violation of the NYCHRL)

327.    Plaintiff reincorporates the foregoing as if fully written herein.

328.    The NYCHRL requires employers to engage in a cooperative dialogue with an employee who requests a reasonable accommodation on the basis of religion.

329.    The NYCHRL provides a separate cause of action against employers who fail to engage in a cooperative dialogue with employees, like Ms. Hernandez, who request a reasonable accommodation:

> It shall be an unlawful discriminatory practice for an employer, labor organization or employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require such an accommodation: (1) For religious needs as provided in subdivision 3 of this section.

N.Y.C. Admin. Code § 8-107 (28)(a).

330.    Defendants were obligated to engage in a cooperative dialogue with Ms. Hernandez regarding her need for a reasonable accommodation to the Vaccine Mandate.

331.    Defendants refused to engage in any cooperative dialogue and simply denied Ms. Hernandez's request for a reasonable accommodation.

332.    The NYCHRL prohibits Defendants from denying Ms. Hernandez's request for a reasonable accommodation until it engaged in a cooperative dialogue with her:

The determination that no reasonable accommodation would enable the person requesting an accommodation to satisfy the essential requisites of a job or enjoy the right or rights in question may only be made after the parties have engaged, or the covered entity has attempted to engage, in a cooperative dialogue.

N.Y.C. Admin. Code § 8-107 (28)(e).

333.    However, Defendants violated the NYCHRL by denying Ms. Hernandez's request for a reasonable accommodation without first engaging in a cooperative dialogue.

334.    Ms. Hernandez sufficiently articulated sincerely held religious beliefs that conflict with the Vaccine Mandate.

335.    The Citywide Panel never had *any* communications with Ms. Hernandez regarding her accommodation requests before denying her reasonable accommodation request.

336.    None of the Defendants had any communications with Ms. Hernandez regarding any potential accommodations that may address her accommodation needs before denying her reasonable accommodation request.

337.    None of the Defendants  ever had any communications with Ms. Hernandez regarding alternatives to her accommodation request before denying her reasonable accommodation request.

338.    None of the Defendants ever had any communications with Ms. Hernandez regarding the difficulties that any potential accommodations may pose to Defendants before denying her reasonable accommodation request.

339.    As a direct and proximate result of Defendants' unlawful discriminatory practices, Ms. Hernandez has suffered, and continues to suffer, substantial losses, including but not limited to the loss of past and future earnings, compensation and benefits, increases, promotions, bonuses, and other employment benefits, for which she is entitled to an award of monetary damages which exceeds $75,000, and other relief

340.    As a direct and proximate result of Defendants' unlawful discriminatory practices, Ms. Hernandez suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages in an amount to be determined at trial.

341.    As a direct and proximate result of Defendants' violations of the NYCHRL, N.Y.C. Admin. Code § 8-107 (28)(a)(1) and § 8-107 (28)(e), Ms. Hernandez is entitled to declaratory and injunctive relief and Defendants are liable to Ms. Hernandez for compensatory damages, including pain and suffering, and punitive damages in an amount to be determined at trial  pursuant to N.Y.C. Admin. Code §8-502(a), and for costs and reasonable attorney's fees pursuant to N.Y.C. Admin. Code §8-502(g).

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff prays that this Court grant judgment to her containing the following relief:

A.  A declaratory judgment that the Defendants' failure to accommodate and failure to engage in a cooperative dialogue with Plaintiff are unlawful discriminatory practices under the New York City Human Rights Law and the New York State Human Rights Law;

B.  A declaratory judgment that the Defendants' actions have violated the Plaintiff's right to the Free Exercise of religion pursuant to the First Amendment of the United States Constitution;

C.  An award to Plaintiff of compensatory damages for the Plaintiff's lost wages, back pay, front pay, overtime, and benefits, in an amount to be determined at trial;

D.  An award to Plaintiff of compensatory damages for the pain and suffering, humiliation, mental anguish, damages to reputation and livelihood, and emotional distress sustained by her in an amount to be determined at trial;

E.  An award to Plaintiff for costs in this action, including reasonable attorney's fees and expert fees under 42 U.S.C. §1988, the New York City Human Rights Law, and New York State Human Rights Law;

F.  An award to Plaintiff for punitive damages in an amount to be determined at trial, in order to punish the Defendant's intentional unlawful discriminatory practices;

G.  An order for civil fines and penalties pursuant to New York Executive Law § 297(9);

H.  An award of pre- and post-judgment interest on all amounts awarded to the Plaintiff at the highest rates and from the earliest dates allowed by law on all causes of action;

I.  Such other and further relief this Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38(b) of the Local Rules, Plaintiff demands trial by jury for all the issues leaded herein so triable.

Dated: Staten Island, New York           Respectfully submitted,
      August 19, 2024

Christina Martinez, Esq.
245 Bricktown Way, Suite J
Staten Island NY 10309
T: (347) 215-4543
ChristinaMartinezEsq@gmail.com

/s/ James Mermigis

_____

James G. Mermigis
The Mermigis Law Group, P.C.
85 Cold Spring Road, Suite 200
Syosset, New York 11791
T: (516) 353-0075
James@MermigisLaw.com


***Attorneys for Plaintiff***

## VERIFICATION

STATE OF SOUTH CAROLINA          )

                                                     )     ss.

COUNTY OF ___HORRY___          )

I, ANITA HERNANDEZ, being duly sworn, deposes and says:

1.  I am the Plaintiff in the within action.

2.  I have reviewed the contents of this Complaint and verify that the statements contained herein are true to the best of my knowledge, except as to matters alleged on information and belief, and as to those matters, I believe them to be true.

3.  I am aware that if any of the statements contained in the Complaint are willfully false, I am subject to punishment.

                                                 _____

                                               ANITA HERNANDEZ

Sworn to before me this
_19_ day of August, 2024

_____
Notary Public

CATHLEEN HOPKINS
NOTARY PUBLIC
STATE OF SOUTH CAROLINA
MY COMMISSION EXPIRES
FEBRUARY 16, 2026