

**MURIEL GOODE-TRUFANT**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**ILONA EHRLICH**
*Assistant Corporation Counsel*
Phone: (212) 356-2549
Fax: (212) 356-2439
iehrlich@law.nyc.gov

January 31, 2025

**BY ECF**
Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:   <u>Anita Hernandez v. The Richmond County District Attorney, et al.</u>
              24-CV-05790 (BMC)

Dear District Judge Cogan:

      I am an Assistant Corporation Counsel in the Office of Muriel Goode-Trufant, Corporation Counsel of the City of New York, and the attorney assigned to represent Defendants City of New York ("City"), the Richmond County District Attorney's ("RCDA") Office, and the RCDA Michael McMahon (collectively "Defendants") in the above-referenced matter. In accordance with Your Honor's Individual Practices III(B)(1), counsel for the parties submit the following joint letter to describe their instant discovery disputes.

      For approximately two-and-a-half hours on January 30, 2025, from approximately 11:00 a.m. until 1:30 p.m., counsel for Plaintiff, Christina Martinez, Esq., and the undersigned and her supervisor, Assistant Corporation Counsel Philip S. Frank, met and conferred. The same counsel met and conferred again this morning at approximately 10:45 a.m. for approximately ten minutes. Although the parties resolved a number of their disputes during these meet and confers, the parties seek court intervention regarding the following remaining discovery disputes.

**<u>DEFENDANTS' MOTION TO COMPEL:</u>**

    **I.**    **A Brief Factual Description Of The Case**

      Plaintiff commenced this action on August 19, 2024, alleging violations of the Free Exercise Clause of the First Amendment, a religious-based failure to accommodate under the New

York City Human Rights Law and New York State Human Rights Law, and a failure to engage in a cooperative dialogue under the New York City Human Rights Law. See Complaint, ECF Dkt. No. 1. Plaintiff, a former Detective Investigator at the Richmond County District Attorney's Office, alleges that the denial of her request for a religious exemption to the City's COVID-19 vaccine mandate and resulting termination from employment violated the Free Exercise Clause.

Plaintiff alleges significant emotional damages as a result of her termination, including "panic attacks, extreme bouts of anxiety, [and] depression." Complaint at ¶ 132. Plaintiff also alleges that as a result of her termination, she was forced to sell her home in New York City. Id. at ¶ 130. Plaintiff testified at her deposition for the first time that her termination and resulting loss of her home caused Plaintiff to have to surrender full custody of her teenage daughter. Plaintiff further testified for the first time that as part of the family court proceeding regarding custody, Plaintiff's ex-husband filed a complaint alleging that Plaintiff physically abused their daughter. Although Plaintiff testified that the allegations were unsubstantiated, the New York City Administration for Children's Services ("ACS") conducted an investigation into the alleged physical abuse by Plaintiff against her daughter. An order of protection was issued against Plaintiff in the family court proceedings, preventing Plaintiff from having any contact with her daughter.

## II. The Court Should Compel Plaintiff to Produce Her ACS and Family Court Records, Including Releases, Which Are Highly Relevant and Proportional to Her Damages Claims

Interrogatory No. 15 of Defendants' discovery demands requested that Plaintiff identify each lawsuit or administrative proceeding, by name, court, and index, docket, case or other identification number, in which Plaintiff was a party. See Plaintiff's Response to Defendants' First Set of Interrogatories and Request for Production of Documents dated January 23, 2025, a copy of which is annexed hereto as Exhibit "A." Defendants' Document Request No. 34 requested that Plaintiff produce any non-privileged documents concerning any lawsuit or administrative action Plaintiff has brought or participated in as a party. Id. Plaintiff responded to Interrogatory No. 15 by stating that she had been a party to "child support and custody matters in family court" without identifying any further information about such proceedings, and Plaintiff objected in the entirety to Document Request No. 34.

At her deposition, Defendants called for the production of the ACS records of investigations into Plaintiff, as the result of her testimony that ACS had recently investigated and unsubstantiated allegations of physical abuse by Plaintiff against her daughter. Defendants have also followed up with Plaintiff and requested that she provide releases for the ACS files and family court records. Although Plaintiff has agreed to provide limited portions of the family court records in her possession, such as final dispositions of child abuse investigations and/or final family court orders, Plaintiff objects to providing the entirety of the family court records in her possession or to provide releases for such records or ACS records.

Plaintiff's family court and ACS records are highly relevant and proportional to Plaintiff's damages claims. Indeed, Plaintiff testified that she lost custody of her daughter as a direct result

of her alleged wrongful termination from RCDA. As such, Plaintiff herself has clearly put these records at issue in the case. Plaintiff cannot now use such damages claims as both a sword and a shield by preventing Defendants from obtaining relevant discovery about her family court proceedings and ACS investigations into alleged abuse and subsequent claims for emotional damages. Defendants require access to the entirety of the family court and ACS records to rebut Plaintiff's claims of severe emotional damages and panic attacks. Preventing access to the entirety of these records will inhibit Defendants' ability to discover and argue that it was not her termination that caused her severe emotional distress but it was Plaintiff's having to relinquish all custody of her only child while also facing serious allegations of physical abuse.

Plaintiff's agreement to produce only the portions of the records consisting of final dispositions will not suffice, as the entirety of the files, which likely will include court records, protective orders, and an array of statements by Plaintiff, which are admissible party admissions and thus impeachment material. Plaintiff's stated privacy concerns for herself and her daughter do not overcome the relevance, proportionality, and discoverability of these records, as such privacy concerns can be addressed by producing the records subject to a confidentiality and protective order. Plaintiff's argument that the records may be sealed under New York State law is unavailing, as state sealing provisions do not govern under the Federal Rules of Civil Procedure or in a party's discovery obligations in federal court. And because Plaintiff herself was a party to the family court proceedings, and because she was the subject of the ACS investigation, under any state sealing provisions, Plaintiff herself can access her own relevant records here by providing a release, let alone by producing all the relevant family court records she has in her possession.

Contrary to Plaintiff's argument, Plaintiff has placed these records at issue by testifying at her deposition that her termination directly and proximately caused Plaintiff to lose custody of her daughter. See Transcript of Plaintiff's Deposition Testimony held on January 28, 2025 at 166:13 - 166:17, the excerpt of which is annexed hereto as Exhibit "B." ("Q: So there were other factors going on at the same time that contributed to you surrendering custody of your daughter? A: None of it began until after I lost my job. None of it.") But even if Plaintiff herself had not directly placed these records at issue – which she has – such records are still relevant and proportional as they go to Defendants' defense that her panic attacks and severe emotional damages were not proximately caused by her termination but by her family court proceedings and ACS investigation into physical abuse of her daughter. And just because Plaintiff has agreed to provide some very limited discovery into these records of her own cherry-picking does not mean that the entirety of the records are not relevant and proportional to Defendants' defenses.

Therefore, Plaintiff's family court records and the entire ACS Investigation records are discoverable and are highly relevant to the parties' claims and defenses in this case.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

I.  **Defendants' Request is Overbroad, Intrusive, and Disproportionate to the Needs of the Case**

Defendants seek sealed family court and ACS records containing confidential and protected information about a minor who is not a party to this case. Bringing a discrimination lawsuit should not require a plaintiff to expose sealed court records about her child's custody proceedings and a CPS investigation. These records contain highly sensitive, confidential

information that should not be opened merely because Plaintiff is pursuing an employment discrimination claim.

Plaintiff has already provided Defendants with all of the relevant information they need. At her deposition, Plaintiff fully testified about the events surrounding her termination, including her custody relinquishment and the unfounded CPS allegations. Moreover, Plaintiff provided two full HIPAA authorizations—one for her personal therapist and another for the court-appointed therapist from the family court proceeding. These records fully document the emotional impact of her termination.

Defendants claim they need all sealed court records and CPS investigation materials to "argue that it was not her termination that caused her severe emotional distress but it was Plaintiff's having to relinquish all custody of her only child while also facing serious allegations of physical abuse". Defendants already possess all the necessary information to make this argument. They do not need to invade highly sensitive, protected records that include confidential details about Plaintiff's minor child.

Additionally, Plaintiff offered to produce the Final Family Court Order confirming her custody relinquishment as well as the final determination by CPS/Office of Children and Family Services—which explicitly found the abuse allegations to be unfounded and sealed the report under Social Services Law § 422.

Plaintiff is not attempting to hide any information about her emotional distress; she has provided extensive discovery, including her complete mental health records. Defendants' request for sealed and confidential child welfare records is disproportionate, unnecessary, and harassing.

## II. Plaintiff's Allegations Regarding Emotional Distress Do Not Justify the Production of These Records

Plaintiff's emotional distress claims are fully set forth in the Complaint, which states:
- Plaintiff suffered from panic attacks, extreme bouts of anxiety, and depression as a result of her wrongful termination. (*ECF No. 1, ¶ 132*).
- Plaintiff experienced severe emotional and financial distress, including being forced to sell her home due to her loss of employment. (*ECF No. 1, ¶ 130*).

Defendants' motion mischaracterizes Plaintiff's allegations to suggest that she claimed custody proceedings were directly caused by her termination—but Plaintiff has made no such claim. Rather, Plaintiff asserts that her wrongful termination caused financial and emotional hardship, which ultimately impacted various aspects of her life. Emotional distress damages do not require disclosure of sealed family court records or child welfare investigations. This Court should reject efforts to compel highly sensitive personal records especially since Plaintiff has already provided sufficient evidence of emotional distress through testimony, therapist records, and sworn statements.

## III. The Requested Records are Protected and Their Production Would Have a Chilling Effect on Plaintiffs Seeking Relief in Discrimination Cases

The requested family court and CPS records are protected under New York law. Social Services Law § 422 mandates that CPS findings be sealed if unsubstantiated—which is precisely the case here. Compelling sealed, confidential records would not only violate this statutory

protection but also set a dangerous precedent that discourages plaintiffs from bringing employment discrimination claims for fear of exposing their children's private legal matters. Employment discrimination plaintiffs should not be forced to open sealed family court records as a condition of pursuing justice. Such requests are harassing and serve no legitimate evidentiary purpose.

### IV. Defendants' Motion Should Be Denied or Strictly Limited

Given the privacy, proportionality, and relevance concerns, Defendants' motion to compel should be denied in its entirety. Plaintiff has already produced:

I. Full mental health records from both her therapist and the court-appointed therapist in family court.

Plaintiff has also offered to produce (subject to a confidentiality order):
I. Final Family Court Order confirming custody relinquishment.
II. Final CPS determination showing that allegations were unfounded and sealed under Social Services Law § 422.

If Defendants maintain that these records are necessary, they must demonstrate a compelling need that outweighs the privacy rights of Plaintiff and her minor child. They have failed to do so.

### V. Conclusion

Defendants' motion to compel is overbroad, harassing, and unnecessary. Plaintiff has already provided extensive discovery on her emotional distress, and Defendants do not need sealed child welfare and family court records to litigate this case. Producing such records would violate New York's statutory protections, intrude on the privacy of a minor, and create a chilling effect on future employment discrimination plaintiffs. For these reasons, the motion should be denied.

## PLAINTIFF'S MOTION TO COMPEL

Plaintiff moves to compel the production of critical discovery that is directly relevant to her claims of religious discrimination and failure to accommodate pursuant to the Free Exercise Clause of the First Amendment, the New York State Human Rights Law, and New York City Human Rights Law, as well as the Defendants' asserted affirmative defense of undue hardship. Despite Plaintiff's efforts to narrow the scope of certain requests and address Defendants' objections, Defendants continue to withhold highly relevant documents and information that go to the core of Plaintiff's discrimination and failure-to-accommodate claims. A true and accurate copy of the Defendants' responses and objections to the Plaintiff's Interrogatories and Document Demands is attached as **Exhibit 1**. A true and accurate copy of the Plaintiff's letter regarding Defendant's inadequate responses is attached as **Exhibit 2**. Plaintiff respectfully requests that the Court order Defendants to produce the following requested discovery.

I. **Religious and Medical Accommodations Granted for District Attorney Employees (Interrogatory No. 5 & Document Request No. 37) and the Title, Position, and Specific Accommodations for Employees Granted Accommodations (Document Requests Nos. 23-30)**

**What Plaintiff Seeks**: Plaintiff seeks the identification of all documents that track how many District Attorney employees across New York City were granted religious accommodations to the Vaccine Mandate (Interog No. 5), and all documents relating to the total number of religious and medical accommodations from the Vaccine Mandate granted to District Attorney employees across the City of New York (Doc. Request No. 37). Plaintiff also seeks documents identifying the title and position of all RCDA and other District Attorney employees across New York City who were granted religious or medical accommodations to the Vaccine Mandate, as well as the specific accommodations granted (Document Requests 23-30).

**Plaintiff's Argument**: Defendants refused to produce records for the Brooklyn, Queens, Manhattan, and Bronx DA's Offices, claiming the request is overbroad, lacks relevance, and raises privacy concerns, and argue that only RCDA data is discoverable. This request does not seek personal identifying information—only aggregate data. In similar cases, such as against the NYPD and FDNY, the City has produced accommodation tracking spreadsheets that the agencies kept, which only has the numerical data on the type of accommodation requested, the title/position, whether it was granted, etc., without personal identifiers. Nonetheless, any privacy concerns can be resolved through redactions, not outright refusal. This information is highly relevant, as Defendants raise undue hardship as an affirmative defense (ECF No. 10). If other DA offices accommodated employees without hardship, it directly undermines Defendants' claim that accommodating Plaintiff would have been infeasible. A FOIL request, attached as **Exhibit 3**, confirms that other DA offices granted religious and medical exemptions, demonstrating that this data exists and that producing it would not be unduly burdensome. Evidence that other employers in the same industry or similar entities have provided the requested accommodation is directly relevant to assessing whether an accommodation is feasible or imposes an undue hardship in a reasonable accommodation case. Additionally, Plaintiff alleges that RCDA handled religious accommodation requests in a discriminatory manner, specifically telling Plaintiff she did not qualify because "Born Again Christian" was not a real religion and citing the Pope's endorsement of the vaccine as a reason for denial. ECF No. 1, ¶¶ 58, 148-49. Plaintiff is not Catholic, but even if she were, it is well-settled law that "[d]enying an individual a religious accommodation based on someone else's publicly expressed religious views—even the leader of her faith—runs afoul of the Supreme Court's teaching that '[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.'" *Kane v. De Blasio*, 19 F.4th 152, 168 (2d Cir. 2021) (emphasis in original). RCDA was the only District Attorney's Office that refused to grant any religious accommodations. This stark contrast to other DA offices' decisions is highly relevant to Plaintiff's discrimination claims, as it suggests RCDA applied different and improper standards to religious accommodation requests in violation of Plaintiff's constitutional rights.

**Defendant's Argument**:

Following the parties' meet and confer, Defendants have agreed to provide the information that Plaintiff seeks as it relates to the RCDA Office but not as it relates to the separate and distinct district attorney's offices for each of the remaining boroughs. Indeed, further to the parties' meet and confer, Defendants have agreed to provide Plaintiff with the number of employees at RCDA

who requested religious and medical accommodations and were granted religious accommodations and the title and position of all RCDA employees who were granted religious accommodations.[1]

Although discovery related to accommodations to the Vaccine Mandate provided by the RCDA may be relevant here, accommodations provided to nonparty employees in unrelated district attorneys' offices is not relevant or proportional. Each district attorney's office is a separate agency with its own physical office spaces, technological capabilities, budgets, employee job responsibilities, size and number of employees. Whether a different and distinct DA's Office could accommodate or claim an undue hardship for a nonparty employee seeking a religious accommodation to the Vaccine Mandate has no bearing on whether or not it was an undue hardship for the RCDA to accommodate Plaintiff, which is the sole issue here. Plaintiff's contention that the RCDA applied a different standard for religious exemption requests to the Vaccine Mandate than other, larger DA's offices in the City is pure conjecture and speculation. And the fact that other DA's Offices did grant some limited number of religious accommodation requests to the Mandate has no relevance to the standard that was used by the RCDA in denying Plaintiff's request at issue here. Accordingly, the Court should deny Plaintiff's request for the unrelated DA's Offices as not relevant or proportional.

## II. Complaints of Discrimination or Accommodation-Related Grievances Against Decision-Makers (Document Request No. 47)

**What Plaintiff Seeks:** Document Request No. 47 seeks complaints of discrimination or accommodation-related grievances against the individuals who reviewed, evaluated, and determined Plaintiff's reasonable accommodation request. After meeting and conferring, Plaintiff narrowed the request to exclude job applications, resumes, performance reviews, and disciplinary records, ensuring the focus remains on relevant allegations of bias or prior misconduct by the five decision-makers on Plaintiff's accommodation request (2 RCDA decision makers and 3 Citywide Panel decision makers) identified by the Defendants.

**Plaintiff's Argument:** Defendants refuse to search for responsive documents, asserting overbreadth and privacy concerns. These objections are unfounded, as complaints regarding discrimination or failure to accommodate by the very individuals who Plaintiff states discriminated against her are directly relevant and routinely disclosed in litigation. If Defendants maintain that no such complaints exist, they should confirm that in writing, rather than refusing to search entirely. Plaintiff maintains that the appropriate scope should cover the entire duration of employment of the individuals involved. Blanket refusal to produce these documents is improper.

**Defendant's Argument:** To the contrary, following the parties' meet and confer, Defendants have agreed to provide Plaintiff with prior allegations of religious discrimination for non-parties Monique Jones and Ashleigh Owens of the RCDA. However, Defendants object to Plaintiff's

---

[1] During the parties' Meet and Confer, Plaintiff agreed to limit this request from "all documents" to only include the numbers of DA Offices employees who requested religious and medical accommodations and who were granted religious accommodations, and the title and position of all RCDA and other District Attorney employees across New York City who were granted religious or medical accommodations to the Vaccine Mandate.

request for prior allegations of religious discrimination for the three remaining individuals, all of whom are voting members of the Citywide Appeals Panel. The three voting members of the Citywide Appeals Panel reviewed Plaintiff's administrative appeal for a religious exemption on the papers and voted as a body, without having had any personal interactions with Plaintiff here. Indeed, the Complaint makes no specific factual allegations regarding any of there individual voting members of the Citywide Appeals Panel. In contrast, Plaintiff makes specific factual allegations in the Complaint regarding Jones and Owens' alleged personal interactions with Plaintiff in her accommodation requests. Accordingly, any discovery into prior allegations of religious discrimination against each of the three voting members of the Citywide Appeals Panel, which rendered its decision as a body, is not relevant or proportional here and would constitute an unwarranted invasion of the personal privacy of non-parties to this matter.

The parties thank the Court for its consideration of these requests.

Respectfully submitted,

**THE LAW OFFICES OF CHRISTINA M. MARTINEZ,**
*Attorneys for Plaintiff*

**MURIEL GOODE-TRUFANT**
**Corporation Counsel of the**
**City of New York**
*Attorneys for Defendants*

By: /s/_____
   Christina Martinez
   Attorney for Plaintiff
   245 Bricktown Way, Suite J
   Staten Island, New York 10309
   ChristinaMartinezEsq@gmail.com

   James G. Mermigis
   Attorney for Plaintiff
   The Mermigis Law Group, P.C.
   85 Cold Spring Road, Suite 200
   Syosset, New York 11791
   James@MermigisLaw.com

By: /s/ _____
   Ilona J. Ehrlich, Esq.
   Assistant Corporation Counsel
   New York City Law Department
   Labor and Employment Law Division
   100 Church Street, 2-196
   New York, New York 10007
   T: (212) 356-2549
   iehrlich@law.nyc.gov