IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NANCY CHINCHILLA, | : | |
| *Plaintiff,* | : | Case No. 1:23-cv-08986-DEH |
| v. | : | |
| | : | |
| NEW YORK CITY POLICE DEPARTMENT | : | |
| and | : | |
| CITY OF NEW YORK, | : | |
| | : | |
| *Defendants.* | : | |
| _____ | : | |

**AFFIDAVIT OF CELY DECOLONGON
IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**CELY DECOLONGON**, being duly sworn, deposes and says:

1.  I am over 18 years of age, of sound mind and otherwise competent to make this Affidavit.
The evidence set out in the foregoing Affidavit is based on my personal knowledge.

2.  I am a New York City Police Department ("NYPD") Sergeant, and I submit
this Affidavit in support of Plaintiff Nancy Chinchilla's Motion for Summary Judgement and in
opposition to Defendant City of New York's Motion for Summary Judgment.

3.  I've been working for the NYPD for about nineteen years.

4.  I worked for the NYPD throughout the entire COVID-19 pandemic.

5.  I applied for a Religious Accommodation to the City's Vaccine Mandate and submitted
my application to the NYPD by the October 27, 2021 deadline.

6.  From July 2021, I worked as a Sergeant in Transit District 33 at the Broadway Junction
train station in East New York, Brooklyn. That's where I was during the whole time the Vaccine
Mandate was in effect.

1

7.  In September 2024, I got transferred to the Medical Division, where I'm now the Sick Desk Supervisor.

8.  Back when I was in Transit District 33, when the Vaccine Mandate was in place, I patrolled the subways in East New York.

9.  I switched between being a patrol supervisor and a desk supervisor. I'd alternate with other Sergeants and Lieutenants.

10. As a desk supervisor, I worked in the police station house inside the train station at Broadway Junction, which was open to the public.

11. People arrested in the subway would get processed there—fingerprinted, mugshot taken, searched, held in holding cells temporarily, and then transported to criminal court for arraignment.

12. I had close physical contact with these people.

13. There was another officer, the telephone switchboard operator, who worked right next to me. We literally shared the same desk.

14. My job included logging prisoners coming in, making sure they were searched properly, and dealing with civilians filing complaints, among other things.

15. As a patrol supervisor, I covered a lot of ground:

- The J train from Marcy Avenue in Williamsburg to Cypress Hills.

- The M train from Marcy Avenue to Metropolitan.

- The A train from Kingston and Throop to Grant Street.

- The L train from Bedford Avenue in Williamsburg to the last stop in Canarsie.

16. Sometimes, I'd have to drive to different train stations. I always shared a patrol car with another officer.

17. My responsibilities included inspecting train stations, patrolling platforms, mezzanines, stairways, walking around, engaging with people, making stops, making arrests, handling medical emergencies, etc.

18. Every tour, I'd inspect the officers I supervised and go through their activity logs on their phones.

19. I also boarded trains, walked through the cars, and dealt with disruptive passengers, homeless individuals, emotionally disturbed people, etc.

20. I responded to emergencies like robberies or violent crimes.

21. I worked in close contact with the public and other NYPD members—traversing crowded subway stations, sharing patrol cars, and dealing with people face-to-face every day.

22. In my role, I had to put hands on people sometimes, for example, when making arrests.

23. My regular hours were 6:55 AM to 3:57 PM. Sometimes I worked overtime or additional shifts when there were shortages, like 2:50 PM to 11:47 PM or 11:05 PM to 8:02 AM.

24. Every day, I sent rosters to the NYPD in case they needed to call on me or others for emergencies, protests, or riots.

25. I was often assigned to "details," where I supervised eight officers during protests, riots, parades, or mobile field force assignments. We worked in high-crime areas, showing force in large groups of officers. I had a lot of direct contact with the public and sometimes had to physically handle people.

26. During these details, I'd either ride in a van with eight officers or ride the train with them to our posts.

27. On February 8, 2022, the NYPD denied my Religious Accommodation request. They told me I could appeal to the Citywide Panel.

28. I filed my appeal within seven days of the denial.

29. No one reached out to talk to me about my request or appeal. Nobody asked about my position, duties, work location, hours, or how much contact I had with the public or my colleagues.

30. On July 13, 2022, the Citywide Panel granted my appeal. The Department of Citywide Administrative Services (DCAS) emailed me, saying my appeal was classified as: "Reason Meets Criteria." That email is attached as **Exhibit 1**.

31. The email also said: "Your agency will follow up with you regarding the specifics of your reasonable accommodation." But the NYPD never followed up.

32. I kept working the same position, doing the same duties, submitting weekly PCR tests. Nothing changed about my job or the interactions I had with the public or other NYPD members.

33. I kept working until the Vaccine Mandate was lifted in February 2023.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 9th, 2025

, NY

CELY DECOLONGON

Sworn to before me on this 9th day of January, 2025.

NOTARY PUBLIC

TRICIA FLEMING
Notary Public, State of New York
No. 01FL6373664
Qualified in Nassau County
Commission Expires 04/16/20 26

4

# EXHIBIT 1

# Reasonable Accommodation Appeal Determination

noreply@salesforce.com <noreply@salesforce.com>
on behalf of
NYC Employee Vaccine Appeals <vaxappeal@dcas.nyc.gov>
Wed 7/13/2022 2:57 PM
To: DECOLONGON, CELY <Cely.Decolongon@nypd.org>

You don't often get email from vaxappeal@dcas.nyc.gov. Learn why this is important

**CAUTION! EXTERNAL SENDER**

**STOP WHEN UNSURE.** Never click on links or open attachments if sender is unknown, and never provide user ID or password. **Suspicious?** Please report to this email address: reportphishing@nypd.org

The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to grant your appeal. This determination represents the final decision with respect to your reasonable accommodation request.

The decision classification for your appeal is as follows: Reason Meets Criteria

Your agency will follow up with you regarding the specifics of your reasonable accommodation.